William DERR, Plaintiff-Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY,
a Corporation, Defendant-Appellant.

No. 31858.

St. Louis Court of Appeals.

Missouri.

Dec. 21, 1965.

Rehearing Denied Jan. 19, 1966.

Application to Transfer Denied
March 14, 1966.

Gerald D. Morris, St. Louis, for appellant.

Sidney Fortus, Harris, Fortus & Anderson, Clayton, for respondent.

WOLFE, Presiding Judge.

This is an action for damages arising out of personal injuries. The injuries were occasioned when a delivery truck, which the plaintiff was driving, was struck in the rear by a bus operated by the St. Louis Public Service Company. There was a verdict and judgment for the plaintiff in the sum of $6,500 and the defendant, after an unavailing motion for a new trial, appealed.

The facts of the matter are that on January 17, 1962, at about 1:20 in the afternoon, plaintiff was driving a parcel delivery truck for the Service Blue Print Company, by whom he was employed. He was southbound on 18th Street in the City of St. Louis and intended to make a right turn to the west on Chouteau Avenue. The flow of traffic at the intersection of 18th and Chouteau is controlled by lights and as the plaintiff's truck reached the intersection the light was red and a vehicle was stopped in front of him waiting for the light to change. 18th Street has three southbound lanes and the plaintiff was driving in the west, or curb lane. Plaintiff brought his truck to a stop about half a car length behind the car ahead and waited. A bus following the plaintiff came to a stop behind the truck which plaintiff was driving.

The plaintiff testified that his truck was stopped for about fifteen seconds when the light changed to green. The car ahead of him moved into the intersection but had to stop because of other traffic, and the plaintiff stopped about four or five feet behind the lead car, signaling with his hand that he intended to stop. He was so stopped, with the front of his truck about one and one-half feet into the intersection and facing in a slightly southwesterly direction for about two or three seconds, when the car ahead of him started up and his truck was struck in the rear by the defendant-appellant bus. His left foot was still on the brake when his truck was hit and his head was caused to "fly backward." He fell to the side and his right side and leg hit the floor. His left hand struck the steering wheel and was bruised, and his head hurt as did his neck and shoulders. He suffered what is called a "whiplash" injury. The impact bent the bumper bracket of the truck and dented the part of the body below the door in the rear of the truck.

A passenger who was in the bus testified that the bus came to a stop behind the truck to wait for the traffic light to change. He stated that it was six to eight feet behind the truck and when the bus started up its speed was four to five miles per hour. It struck the rear of the stopped truck. He said that he saw the plaintiff holding the left side of his neck after he got out of his truck.

The defendant called as a witness the operator of the bus who stated that he stopped his bus four to five feet behind the truck. He looked to his right to see if there were any prospective passengers on the sidewalk. While he was so looking he was "under the impression that the light had changed to green" and he stepped on the accelerator. He then realized that the truck ahead of him was not moving and he slowed down but the bus gave the truck a mild bump before it stopped. He said the bus was not going more than a mile an hour at the time. A former employee of the defendant company who was a passenger on the bus testified he was seventy-six years of age and had been retired from operating the company's buses because of his eyesight. He did not see the truck move and said that the impact was just a "bump."

■ It is asserted that the court erred in refusing an Instruction offered by the defendant and designated as Instruction "A." It is a verdict directing Instruction predicated upon a finding that there was no other vehicle blocking the path of the truck and that the plaintiff failed to give a timely warning that he was going to stop or turn. There is no doubt that a defendant is entitled to an Instruction on contributory negligence where that is within the pleadings and the evidence. Anderson v. Welty, Mo. App., 334 S.W.2d 132, and cases cited there-

in. Much of the Instruction refused, however, is not supported by any evidence.

■ There was no evidence from which the jury could have found that the plaintiff truck was not blocked by a vehicle ahead. Neither was there any evidence that a failure to signal for a right turn, which was disjunctively submitted, could have in any way contributed to the accident; nor is the hypothesized failure supported by the evidence. The only negligence shown is the negligence of the defendant driver who stated that he started his bus without looking ahead which caused it to collide with the truck in front of it. Where the defendant submits an affirmative finding of facts, the existence of which could disprove an essential fact of the plaintiff case, that submission must have factual support in the evidence. Sutton v. Fox Missouri Theatre Company, Mo., 356 S.W.2d 41. The Instruction was properly refused.

In the motion for a new trial filed by the defendant he set forth as one of his grounds the assertion that one of the jurors who tried the case made a material misrepresentation during the voir dire examination. This was buttressed by an affidavit and the court had a hearing upon the matter. It is contended here that the court erred in refusing to grant a new trial for the reason that the defendant was denied a fair trial by an impartial juror. It is asserted that:

"* * * one of the jurors intentionally concealed the fact that two years previously he collected money from a lawsuit for personal injuries sustained in an accident even though he was asked to reveal such information to the counsel for defendant on voir dire examination."

Near the outset of his examination of the jurors in relation to any claims they might have had, the attorney for the defendant stated:

"* * * A claim is simply this, any time/you attempt to get money—you make a claim for money against somebody else for personal injuries, or property damage. Which might include an accident you have had on the job, or an automobile accident—or, any time you have made a claim for money from somebody else, because of alleged personal injury. Does anybody have any question about what we mean by a claim?"

He also asked the panel if any of them had hired a lawyer.

The juror here in question was a man named Fitzsimmons. He made no response to either question directed to the entire panel. A juror named Eaton told of his father being killed upon being struck by an automobile; a Mr. Horn told of an accident in which his daughter was hurt; and a Mrs. Kyro told of being hit by an automobile. Another juror told of his automobile being struck, and immediately following the juror's answer Mr. Fitzsimmons was asked if he or any member of his family "had such a claim." To this Fitzsimmons answered "no."

Fitzsimmons had worked for the Telephone Company for fifteen years as a cable splicer and had a high school education. After graduating from high school he had served in the Marine Corps. He testified at the hearing on a motion for a new trial that over two years prior to the time of the trial of the case here under consideration that he had an accident. He had fallen on the steps of his father-in-law's house and had broken an ankle. An insurance adjuster offered him $50.00 in settlement but he knew a young lawyer and talked to him about the matter. The lawyer gave him the impression that he did not have much of a case so he told the lawyer to see if he could get him $100. He finally received in settlement $130 and he assumed that the lawyer got something out of the case but they never mentioned the amount. He thought that the total settlement was $250. The lawyer filed the suit but Fitzsimmons denied any knowledge of this. He knew he went to a lawyer's

office and answered questions but did not know that his deposition was being taken and thought he was just giving a statement.

He said that he heard the answers of the other jurors during the voir dire examination but he thought you had a claim only when you went to court before a judge and jury. He said that he supposed he was "just stupid" in not answering the questions but that he was not in any way prejudiced in the trial of the case and had no reason to be. As stated, the judge overruled the motion for a new trial and it is contended that under the foregoing evidence he erred in so doing.

■ In support of its point the defendant cites a number of cases, all of which are in accord with the fundamental proposition that parties are entitled to a trial by a fair and impartial jury. The first cited case is Piehler v. Kansas City Public Service Company, 357 Mo. 866, 211 S.W.2d 459. There the offending juror failed to reveal that he had a claim against the same defendant. Next cited is Girratono v. Kansas City Public Service Company, Mo., 272 S.W.2d 278. In that case the trial court was affirmed in granting a new trial because of failure of one juror to reveal on voir dire that he had had several lawsuits. Triplett v. St. Louis Public Service Company, Mo. App., 343 S.W.2d 670, also cited, involved intentional concealment of prior lawsuit by a prospective juror. Another case cited is Lee v. Baltimore Hotel Company, 345 Mo. 458, 136 S.W.2d 695, 127 A.L.R. 711. It has no relation to the facts before us for in that case an interloper sat in place of a juror regularly summoned and gave a false name when interrogated. We are cited to Brady v. Black and White Cab Company, Mo.App., 357 S.W.2d 720. A motion similar to the one here under consideration was heard by a judge who had not tried the case, which fact the court considered of sufficient importance to insert in its opinion reversing an order denying a new trial.

■ All of the foregoing cases differ in some material respect from the one before us. Here the judge who tried the case heard the motion and vigorously questioned the juror about his failure to answer the question propounded. The trial court came to the conclusion that there was no intentional concealment. The matter of granting a new trial under such circumstances is primarily for the trial court. It is to be decided by that court in the exercise of its sound discretion and it is reviewable only for an abuse of discretion. Duffendack v. St. Louis Public Service Company, Mo.App., 365 S.W.2d 52. An unintentional failure to disclose information as to matters not connected with the case does not, of itself, show prejudice on the part of the juror. Akers v. St. Louis Public Service Company, Mo., 370 S.W.2d 347; Davis v. Kansas City Public Service Company, Mo., 233 S.W.2d 679.

■ Here the court may have concluded that the juror's concealment was unintentional for he stated that he had not been attentive and that he assumed his failure to answer was just stupid. Apparently the court believed his statement and this coupled with the fact that he misunderstood the word "claim" appears sufficient to support the judgment of the court.

We cannot say from the bare record before us that the judge who saw and questioned the juror abused his discretion.

The judgment is affirmed.


ANDERSON, J., and ROY W. McGHEE, Special Judge, concur.


RUDDY, J., not participating.