Nadene A. and Walter WEMOTT,
Appellants,

v.

Solvin W. TONKENS, Respondent.

No. WD 57397.

Missouri Court of Appeals,
Western District.

June 30, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 2000.

Application for Transfer Denied
Oct. 3, 2000.

Clifford B. Wood, Kansas City, for appellant.

Chukwuemek N. Chionuma, Kansas City, for respondent.

Before HOWARD, Presiding Judge, ELLIS, and LAURA DENVIR STITH, Judges.

JOSEPH M. ELLIS, Judge.

Nadene Wemott appeals from a judgment entered by the circuit court of Jackson County, pursuant to a jury verdict in

favor of the defendant, Solvin Tonkens. Wemott contends that the circuit court erred in denying her motion for new trial because a juror intentionally failed to disclose information related to questions specifically asked during *voir dire*. Because we hold that a juror intentionally withheld information during the *voir dire* examination, we reverse and remand the cause for a new trial.

On April 12, 1994, Dr. Solvin Tonkens' vehicle collided with a vehicle driven by Nadene Wemott (Wemott) in Kansas City, Missouri. Wemott and her husband, Walter Wemott, filed suit against defendants Ford Motor Company and Tonkens for personal injuries and loss of consortium arising out of the automobile accident. Wemott does not appeal the trial court's grant of summary judgment in favor of Ford, nor does she appeal a directed verdict granted at trial in favor of Dr. Tonkens on Walter Wemott's loss of consortium claim. In her petition, Wemott alleged Tonkens failed to stop at a red light at an intersection, thereby causing his vehicle to collide with Wemott's car. She claimed Tonkens negligently operated his vehicle causing severe injuries to her sternum and spine. The case went to the jury on her claim for back injuries and her consortium claim. The jury found neither party was at fault in the collision. Wemott appeals.

Wemott contends that *venire* person Michael D. Barnett intentionally failed to disclose information during *voir dire*, specifically related to the numerous suspensions of his driver's license, a traffic violation, and his previous involvement in two civil lawsuits. During *voir dire*, Mr. Wood, counsel for Wemott, asked the prospective jurors the following question: "Has anyone ever had your driver's license suspended or revoked for any reason?" Two prospective jurors indicated that they had their licenses suspended or revoked fifteen to twenty years ago. Barnett disclosed that his license had been suspended or revoked as a result of his refusal to take a breathalyzer test in 1994 or 1995. He did not disclose any other suspensions or revocations of his driver's license. Later during *voir dire*, the following dialogue took place between Wemott's counsel and Barnett:

> MR. WOOD: Have any of you ever been a party to a lawsuit, and I'm talking about a civil lawsuit, a civil case like this, not necessarily an accident case, any kind of civil case other than a divorce proceeding?
>
> MR. BARNETT: Yeah. When I was going to college, me and some college roommates, a trailer we rented while we went the [sic] school, we got sued by our landlords for the damage we did to it while we lived there.

Barnett did not disclose any other civil lawsuits to which he was a party. Several other potential jurors revealed civil lawsuits with which they had involvement, including a number of automobile-related cases.

On March 28, 1999, Wemott filed a motion for new trial alleging that she was denied her constitutional right to a fair and impartial jury because juror Barnett [1] failed to fully and truthfully respond to certain questions during the *voir dire* examination. Wemott claimed, *inter alia*, that Barnett failed to disclose that his driver's license had been suspended or revoked on eight occasions, that he had been convicted of running a stop sign, and that he had numerous other convictions for traffic violations. She also stated that Barnett failed to disclose certain civil actions or judgments to which he was a party. Wemott requested an evidentiary hearing to present evidence on the motion for new trial.

Prior to the hearing, Tonkens filed suggestions in opposition to the motion, in-

---

1. In her motion for new trial, Wemott also alleged juror Hammons failed to fully and truthfully respond to questions asked during *voir dire*. However, Wemott does not raise an issue on appeal regarding juror Hammons.

cluding an affidavit from Barnett. In the affidavit, Barnett stated that he did not reveal a driver's license suspension in 1996 because he believed his statement during *voir dire* that he had his driver's license suspended in 1994 as a result of a DWI encompassed the 1996 suspension. He also indicated that he failed to disclose a 1992 DWI conviction resulting in a license suspension because he understood the question asked during *voir dire* regarding license revocations or suspensions to call for the disclosure of suspensions remaining on his driving record at the time of the *voir dire* examination. He stated that he believed the 1992 DWI conviction which resulted in a suspension of his license was no longer a part of his driving record. Barnett disclosed that he was aware of the lawsuit styled *Michael Barnett v. Director of Revenue,* Case No. 16CV93–06919 at the time of the *voir dire* examination. Although he did not specifically mention this during *voir dire,* Barnett claimed in his affidavit that he did inform the court of this proceeding by revealing his driver's license suspension in 1994 for a DWI. Barnett stated that he was unaware of two other civil suits to which he was a party[2] at the time of the *voir dire* examination, claiming he was not served with process in either case. He further indicated that he did not recall a conviction for running a stop sign in 1987 during the *voir dire* examination.

On May 20, 1999, the court held an evidentiary hearing on Wemott's motion. During the hearing, Barnett testified that he remembered at the time of *voir dire* that he had two DWI convictions, both of which resulted in the suspension of his driver's license. Although Barnett did disclose during *voir dire* that his license had been suspended in 1994 for refusing to take a breathalyzer, Barnett failed to reveal during the examination that he had a DWI conviction in 1992 that resulted in the suspension of his license. Despite testify-

ing that he remembered both of his DWIs at the time of the *voir dire* examination, he later indicated that he did not reveal this 1992 suspension and conviction because he did not even think about it at the time, and, in addition, he did not believe the 1992 DWI was still on his record at the time so he did not believe he needed to disclose it. Counsel for Wemott then asked Barnett, "Of course, my question hadn't limited it in any way to anything that was currently on your driving record. Would you agree with that?" Barnett answered, "I will give you that, yeah, but if you went a little further I surely would have answered your question."

Barnett also testified that he remembered that he received a DWI in 1994. During *voir dire,* he disclosed that his license was suspended as a result of this conviction. He received a chemical refusal revocation on July 3, 1994 for the DWI. On January 17, 1995, Barnett's license was suspended for five years because of the two DWI convictions. Barnett testified that he remembered these suspensions during *voir dire,* and he further noted that his license was still under this suspension at the time of the *voir dire.* Barnett failed to disclose the five-year suspension during *voir dire,* even though his license was still under this suspension at the time.

Evidence of several other license suspensions was presented at the hearing. On January 28, 1993, Barnett received a thirty-day point suspension. He claimed he had no knowledge of that suspension. Barnett's license was suspended on August 7, 1994 for failure to maintain proof of insurance. He testified that he did not remember this suspension. On March 3, 1995, Barnett received another point suspension of his license. Barnett's license was suspended again on July 23, 1996 for failure to maintain proof of insurance. Barnett claimed to have no knowledge of this suspension, but then provided details to the court of the circumstances sur-

---

**2.** *Cumis Insurance Society v. Michael Barnett,* Case No. 16CV92–11415; *Dr. J.A. Direnna,* *Jr., P.C. v. Michael Barnett,* Case No. 16CV96–19781.

rounding the suspension. On September 2, 1996, Barnett received a point suspension for the accumulation of traffic convictions. Wemott offered written notices to Barnett from the State of Missouri concerning all of these suspensions; Barnett did not deny receiving the notices of suspension.

At the hearing, counsel for Wemott also questioned Barnett about the civil cases to which he was a party. He asked Barnett what he meant in his affidavit when he stated he had informed the court of the lawsuit styled *Micheal Barnett v. Director of Revenue,* Case No. 16CV93–069189. At first, Barnett answered that he believed it was part of his 1994 DWI conviction that resulted in a license suspension. The case pertained to his request for a hardship license, and he claimed he thought the case was simply a part of the DWI. In fact, the case was filed in 1993 and related to the 1992 DWI and resultant suspension of his driver's license. As a result of the case, Barnett received a hardship license in April 1993. Upon further questioning, Barnett stated that he did not remember discussing the case during *voir dire* when asked about civil cases in which he was a party. He also testified that it pertained to the 1992 DWI, not the 1994 DWI. Despite the fact that he indicated in his affidavit he was aware of the case during *voir dire,* Barnett testified he did not know the hearing for the hardship license was part of a lawsuit.

Wemott's counsel later questioned Barnett about his recollection of the case of *Dr. J.A. Direnna, Jr., P.C. v. Michael Barnett,* Case No. 16CV96–19781. Barnett testified that he did not think about this case until the preparation for his affidavit. He stated that he did not remember getting served with papers, but he indicated that his paycheck was garnished twice for the recovery of the money he owed Dr. Direnna. Wemott's counsel pointed out to Barnett that the papers in the case indicate he was served with process.

On June 14, 1999, the trial court denied Wemott's motion for a new trial.

One of the fundamental principles of our judicial system is the constitutional right to a fair and impartial jury. *Mo. Const. art. I, sec. 22(a); Williams By and Through Wilford v. Barnes Hosp.,* 736 S.W.2d 33, 36 (Mo. banc 1987). During the *voir dire* examination, each juror has the duty to fully, fairly and truthfully answer each question asked so that determinations may be made about each juror's qualifications and counsel may make informed challenges. *Williams,* 736 S.W.2d at 36 (*quoting Rinkenbaugh v. Chicago, Rock Island & Pacific R.R. Co.,* 446 S.W.2d 623, 626 (Mo.1969)); *Groves v. Ketcherside,* 939 S.W.2d 393, 395 (Mo.App. W.D.1996). "Both parties are entitled to unbiased jurors whose experiences, even innocently and reasonably undisclosed, will not prejudice the resolution of the cause." *Groves,* 939 S.W.2d at 395 (*quoting Williams,* 736 S.W.2d at 36).

Juror nondisclosure may be characterized as either intentional or unintentional. In *Williams,* the Missouri Supreme Court set forth the test for differentiating between intentional and unintentional nondisclosure:

> Intentional nondisclosure occurs: 1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable.
>
> Unintentional nondisclosure exists where, for example, the experience forgotten was insignificant or remote in time, or where the venireman reasonably misunderstands the question posed.

736 S.W.2d at 36 (internal citations omitted); *See also Heinen v. Healthline Management, Inc.,* 982 S.W.2d 244, 247–48 (Mo. banc 1998); *Brines By and Through Harlan v. Cibis,* 882 S.W.2d 138, 139 (Mo.

banc 1994); *Jackson v. Watson*, 978 S.W.2d 829, 832 (Mo.App. W.D.1998). In order for nondisclosure, either intentional or unintentional, to occur, a clear question must be asked during the *voir dire* examination. *Brines*, 882 S.W.2d at 139; *Jackson*, 978 S.W.2d at 832.

Information which would reveal the possibility of the juror's predisposition to either the plaintiff or defendant is material. *See Brines*, 882 S.W.2d at 140. "If a juror intentionally withholds material information requested on *voir dire*, bias and prejudice are inferred from such concealment. For this reason, a finding of intentional concealment has 'become tantamount to a per se rule mandating a new trial.'" *Williams*, 736 S.W.2d at 37 (internal citations omitted); *See also Schultz v. Heartland Health System, Inc.*, 16 S.W.3d 625, 627 (Mo.App. W.D.2000).

Under the test set forth in *Williams*, Barnett's nondisclosure of his driver's license suspensions was intentional. The question clearly asked if anyone had *ever* had their driver's license suspended or revoked for *any* reason. The question unequivocally triggered the prospective jurors' duty to disclose any suspensions or revocations of their driving privileges. *See Brines*, 882 S.W.2d at 139 (determining that a question asking prospective jurors if anyone had been a defendant in a lawsuit triggered a duty to disclose previous lawsuits against them). Barnett admitted that his license had been suspended in 1994 or 1995 as a result of his refusal to take a breathalyzer test. By responding to the question and informing counsel and the court of one of his license suspensions, Barnett obviously understood the question asked. At the evidentiary hearing, Barnett testified that he remembered during *voir dire* that he had two DWI convictions, one in 1992 and one in 1994, that resulted in the suspension of his license. Barnett further testified that he did not reveal the license suspension resulting from the 1992 DWI conviction because he believed it was no longer on his record. The question asked prospective jurors to relate any license suspensions or revocations, not just those currently on their record. During the evidentiary hearing, as Wemott's counsel questioned Barnett about his numerous suspensions, Barnett justified his incomplete response during *voir dire* on the basis that he was sure that "99 percent" of the numerous suspensions arose out of the two DWI incidents.

Barnett's affidavit and his testimony during the evidentiary hearing show that Barnett remembered at least the following suspensions at the time of *voir dire*: (1) the suspensions resulting from the refusals to take breathalyzer tests in 1992 and 1994; (2) the 1995 five-year suspension for having two DWI convictions; and (3) a 1996 suspension resulting from a citation for driving on a suspended license. Barnett determined on his own to disclose only the 1994 suspension resulting from a DWI. A potential juror may not judge his own qualifications. *Beggs v. Universal C.I.T. Credit Corp.*, 387 S.W.2d 499, 503 (Mo. banc 1965); *Rife v. State Farm Mutual Auto. Ins. Co.*, 833 S.W.2d 42, 43 (Mo.App. W.D.1992). During the hearing, Barnett acknowledged that the question was not limited to suspensions currently reflected on his driving record. Barnett did not have the right to (a) determine whether he would fully and truthfully answer the question asked; (b) fail to disclose the fact he had numerous license suspensions; or (c) decide which suspensions should be disclosed. By his intentional non-disclosure, Barnett undertook to judge his own qualifications rather than providing counsel with the information requested to aid their decision on which potential jurors to strike.

From the record, it is clear that Barnett was not forthright in responding to counsel's questions. It is likewise clear that, under the *Williams* test, Barnett's non-disclosure was intentional. There is no basis to find a reasonable inability on Barnett's part to comprehend the ques-

tion. Moreover, it is apparent that Barnett remembered the experiences and the information requested. This reflects a conscious decision on Barnett's part to determine his qualification "rather than providing the information sought so that the attorneys could make their strikes in an informed manner." *Rife,* 833 S.W.2d at 43. "Having found intentional concealment, bias and prejudice must be presumed to have influenced the verdict." *Williams,* 736 S.W.2d at 38. Accordingly, we can only conclude that the trial court erred in failing to grant Wemott's motion for new trial.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

All concur.