**Beth BELL and Robert Bell, Appellants–Respondents,**

v.

**Felix N. SABATES, Sr., M.D., and Felix N. Sabates Eye Associates, P.C., Respondents–Appellants.**

**Nos. WD 59833, WD 59855.**

Missouri Court of Appeals, Western District.

Sept. 10, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 29, 2002.

Application for Transfer Denied Dec. 24, 2002.

Paul L. Redfearn, III, Kansas City, MO, for appellants-respondents.

Norman I. Reichel, Jr., Overland Park, KS, for respondents-appellants.

Before JOSEPH M. ELLIS, Chief Judge, RONALD R. HOLLIGER, Judge and LISA WHITE HARDWICK, Judge.

JOSEPH M. ELLIS, Chief Judge.

On September 2, 1998, Appellants/Cross–Respondents Beth and Robert Bell filed a Petition for Damages against Respondent/Cross–Appellant Dr. Felix Sabates in the Circuit Court of Jackson County, Missouri. In the petition, the Bells claimed that Dr. Sabates, an ophthalmologist, had been negligent in performing cataract surgery on Beth Bell's left eye and in failing to diagnose certain problems following the surgery resulting in a significant loss of vision in her left eye.

Jury trial in the matter began on December 10, 2001. On December 15, 2001,

the jury returned a verdict in favor of Dr. Sabates.

On January 5, 2001, the Bells filed a Motion for New Trial alleging that the verdict was against the weight of the evidence, that the trial court had committed instructional error, and that juror nondisclosure warranted the granting of a new trial. The trial court held a hearing on the juror nondisclosure issue on March 15, 2001.

On March 30, 2001, the trial court entered an order granting a new trial. That order stated:

> In the New Trial Motion Plaintiffs alleged misconduct on the part of four jurors, all of whom signed the nine-person verdict, by failing to disclose information of prior claims.

> Juror Hull and Waldo did not testify at the New Trial Motion hearing. Juror Edwards and Williams did testify. Juror Williams had been sued nine years earlier and his response was that occurred during the time he was in bankruptcy and he had forgotten about it, when inquiry had been made on *voir dire* exam of the panel. That explanation is credible and believable and no intentional concealment is found. Juror Edwards presents a different result.

> Juror Edwards had been sued two years previous to the trial and his testimony as to why he did not disclose is evasive, non-responsive, and unbelievable. He never stated he didn't understand the use of the word "claim" in the *voir dire* question. The four affidavits of the involved jurors submitted by defendant are lawyer-worded and copy machine produced and are meaningless and add nothing to the equation. Four jurors don't have the same version for not answering *voir dire* questions or give the same answer to the question.

> The Court finds that Juror Williams intentionally concealed information as to his prior lawsuit and Plaintiffs are entitled to a New Trial as a result thereof and the New Trial Motion is SUSTAINED. In all other respects, the New Trial Motion is OVERRULED.

On April 6, 2001, Dr. Sabates filed a Notice of Appeal from the trial court's grant of a new trial. On April 10, 2001, the Bells filed a cross-appeal asserting instructional error. Pursuant to the rules of appellate procedure, the Bells have been designated the Appellants, and Dr. Sabates has been designated the Cross–Appellant.

We first address Dr. Sabates' claim that the trial court erred in granting a new trial based upon the nondisclosure of Juror Edwards during *voir dire*. During *voir dire*, plaintiff's counsel asked, "One of the questions I forgot to ask is how many of you or members of your immediate family or close friends have had a claim brought against you? Anybody had that experience?" Juror Edwards failed to reveal his previous involvement as a defendant in a personal injury case two years earlier in response to this question. The trial court granted a new trial based on this nondisclosure.

On appeal, Dr. Sabates argues that the question was not sufficiently clear to allow a finding of nondisclosure. He also claims that the trial court's finding that Juror Edwards intentionally failed to disclose the information was not supported by the evidence. Dr. Sabates contends that the suit filed against Juror Edwards was an insignificant event and that it was reasonable for him to have misunderstood the question.

██ Parties to a suit have a constitutional right to a fair and impartial jury, and to that end, " '[b]oth parties are entitled to unbiased jurors whose experiences,

even innocently and reasonably undisclosed, will not prejudice the resolution of the cause.'" *Banks v. Village Enters., Inc.,* 32 S.W.3d 780, 786 (Mo.App. W.D. 2000) (quoting *Wemott v. Tonkens,* 26 S.W.3d 303, 307 (Mo.App. W.D.2000)). Accordingly, "'[d]uring the *voir dire* examination, each juror has the duty to fully, fairly and truthfully answer each question asked so that determinations may be made about each juror's qualifications and counsel may make informed challenges.'" *Id.* (quoting *Wemott,* 26 S.W.3d at 307). A motion for new trial will be granted if the moving party shows that a juror failed to disclose material information during *voir dire* that resulted in bias and prejudice to the moving party. *Id.*

■ In addressing a motion for new trial based upon juror nondisclosure, the trial court must first determine whether a nondisclosure occurred and, if so, whether the nondisclosure was intentional or unintentional. *State v. Mayes,* 63 S.W.3d 615, 625 (Mo. banc 2001). "'Intentional nondisclosure occurs: 1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable.'" *Portis v. Greenhaw,* 38 S.W.3d 436, 443 (Mo.App. W.D.2001) (quoting *Schultz v. Heartland Health Sys., Inc.,* 16 S.W.3d 625, 627 (Mo.App. W.D.2000)). "'Unintentional nondisclosure exists where, for example, the experience forgotten was insignificant or remote in time, or where the venireman reasonably misunderstands the question posed.'" *Id.* (quoting *Schultz,* 16 S.W.3d at 627). The trial court is afforded significant discretion in determining whether a nondisclosure was intentional or unintentional, and its decision in this re-

gard will not be reversed on appeal absent an abuse of that discretion. *Id.*

■ However, "'[n]ondisclosure, whether intentional or unintentional, can occur only after a clear question is asked on *voir dire.*'" *Banks,* 32 S.W.3d at 786 (quoting *Brines ex rel. Harlan v. Cibis,* 882 S.W.2d 138, 139 (Mo. banc 1994)). In order to establish a claim of juror nondisclosure, counsel must have asked a question "reasonably calculated to elicit the allegedly withheld information." *Id.* at 788. "If the juror's answer or lack thereof reasonably responds to the *voir dire* question as it was posed, and it reveals all known and relevant information, there has been no juror nondisclosure, intentional or otherwise." *Id.*

■ Thus, we must first determine whether the question asked of Juror Edwards was sufficiently clear to have elicited the information that was not disclosed from an ordinary juror. "Although we apply an abuse of discretion standard to the trial court's determination that an intentional or unintentional nondisclosure occurred, we review the threshold determination of the clarity of the question *de novo.*" *Ewing v. Singleton,* 83 S.W.3d 617, 620 (Mo.App. W.D. June 2002).

■ "A question posed to the panel on *voir dire* is clear only if a lay person would reasonably conclude that the undisclosed information was solicited by the question." *Id.* "How a reasonable lay person interprets the meaning of a question depends not only on the words used, but also on the context." *Keltner v. K–Mart Corp.,* 42 S.W.3d 716, 726 (Mo.App. E.D.2001).

During *voir dire,* the following exchanges took place:

Plaintiff's counsel: Are there any of you or members of your family or close friends that suffer from any serious disabling injury? Talked about the eyes

and I know about that. But any of you or members of your immediate family— yes ma'am.

Venireman Carter: Brenda Carter. My brother is a quadriplegic due to a car wreck.

Plaintiff's Counsel: Was there, probably, was there any claims involved in that or anything about that?

Venireman Carter: Just finished up a lawsuit against the State of Missouri.

* * *

Plaintiff's Counsel: Is there [sic] anybody else that shares the same opinion, when something goes wrong and, for example, been negligent, does anybody else feel like it doesn't do any good to bring a claim or lawsuit? Anyone else share that feeling?

* * *

Plaintiff's Counsel: Are there any of you that simply feel like to file a lawsuit or a claim for personal injury damages, whether it be a medical negligence case or any kind of personal injury claim, that because of your personal beliefs or religious beliefs, whatever those beliefs may be, that you just feel like that that is not something that—that is wrong to do, shouldn't be done? I don't see any hands.

Are there any of you that in the past just simply would not bring a claim or lawsuit because of personal or religious beliefs? Okay. I don't see any hands.

* * *

Plaintiff's Counsel: Have any of you or members of your immediate family or close friends ever brought a claim or a lawsuit?

Venireman Pavelka: My mom is considering one right now.

* * *

Plaintiff's Counsel: And so that hasn't been brought yet?

Venireman Pavelka: No.

Plaintiff's Counsel: All right. Thank you. Anyone else?

Venireman Carter: The one I spoke about my brother that is settled with the State of Missouri.

Plaintiff's Counsel: Got you. Were you satisfied with that result?

Venireman Carter: I don't think he was, but I am impartial to it.

Plaintiff's Counsel: Okay.

Venireman Williams: Two of my kids were in an accident. I didn't have custody, but they sued and had a settlement in that claim.

Plaintiff's Counsel: Did that, was that resolved to your satisfaction? Were you satisfied with how it came out?

Venireman Williams: I had no opinion in the matter because I wasn't one of the custodial parents.

Plaintiff's Counsel: I understand. Okay. Anything about that experience that would influence you in this case?

Venireman Williams: No.

Plaintiff's Counsel: Anyone else?

Venireman Merrill: In the statement I made about the medical care of my son, we did file a lawsuit against that.

Plaintiff's Counsel: Were you satisfied with how that came out?

Venireman Merrill: Yes, we were.

* * *

Plaintiff's Counsel: One of the questions I forgot to ask is how many of you or members of your immediate family or close friends have had a claim brought against you? Anybody had that experience? I don't see any hands.

A cursory review of the foregoing exchanges reveals that both the questions and answers use the words "claim" and "lawsuit" interchangeably. In particular, the answers of the venirepersons demonstrate that there was a common understanding among the venire that the discussion went to claims and lawsuits. Plaintiff's counsel asked Venireperson Carter if any claims resulted from her brother's car wreck that left him a quadriplegic. She immediately responded "[j]ust finished up a lawsuit against the State of Missouri." While following up on an answer to a prior question, Plaintiff's counsel asked "does anybody else feel like it doesn't do any good to bring a claim or lawsuit?" In three other separate questions that followed, Plaintiff's counsel inquired about "a lawsuit or a claim," "a claim or lawsuit," and "a claim or a lawsuit." In addition, three different Venirepersons answered questions by talking about "settling" claims, suing and having a "settlement in that claim," and filing a "lawsuit" and being satisfied with how it came out.

These questions and answers span seventeen pages of transcript. The excerpts reflect an on-going discussion as Plaintiff's counsel asked questions and the venire responded, as opposed to an isolated reference. Given this context and the extent of time and subject matter covered prior to the ultimate question that was posed, it is clear that an ordinary lay person would reasonably have concluded that they should disclose the fact that they had previously been sued in a personal injury matter in response to the question. The trial court did not err in finding the question sufficiently clear to proceed with its determination of whether Juror Edwards intentionally or unintentionally failed to disclose the prior lawsuit.

Having determined that the question was sufficiently clear, we next turn to Appellant's claim that the trial court erred in finding that Juror Edwards' nondisclosure was intentional. Appellant argues that the evidence does not support such a finding.

"'Intentional nondisclosure occurs: 1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable.'" *Banks*, 32 S.W.3d at 786 (quoting *Wenott*, 26 S.W.3d at 307). "Whether the requirements for grant of a new trial are met in a particular case based on juror nondisclosure rests in the sound discretion of the trial court." *Mayes*, 63 S.W.3d at 625. The trial court's ruling in this regard will only be disturbed on appeal for an abuse of that discretion. *Portis*, 38 S.W.3d at 443.

At the hearing on the motion for new trial, Juror Edwards testified that he knew that a "lawsuit or claim" had been brought against him when he "got the papers." He also acknowledged that he understood when asked whether a claim had been brought against him, that a "claim would include papers being served on [him] that had to be turned over to the insurance company." He stated that at the time the question regarding claims brought against him was asked, he remembered the suit that had been filed against him and that he had turned the papers over to his insurance company. In short, he admitted he knew at the time the question at issue was asked that a lawsuit had been filed against him just two years before and that he knew that a "claim" would include a lawsuit. Based on this testimony alone, the trial court most certainly could have found that Juror Edwards had "no

reasonable inability to comprehend the information solicited by the question," that he actually remembered the suit being brought against him, and that any purported forgetfulness was unreasonable in light of the significance of the event. *Banks,* 32 S.W.3d at 786. This evidence sufficiently supports a finding by the trial court of intentional nondisclosure.

In support of his position, Dr. Sabates cites to numerous cases in which appellate courts have affirmed a trial court's finding that the juror had misunderstood a question about claims against them and found that the nondisclosure was unintentional. *See e.g. Barb v. Farmers Ins. Exch.,* 281 S.W.2d 297, 302 (Mo.1955); *Begley v. Adaber Realty & Inv. Co.,* 358 S.W.2d 785, 793 (Mo.1962); *Williams ex rel. Wilford v. Barnes Hosp.,* 736 S.W.2d 33, 37 (Mo. banc 1987); *Tyler v. Kansas City Pub. Serv. Co.,* 256 S.W.2d 563, 564 (Mo.App. W.D. 1953); *Duffendack v. St. Louis Pub. Serv. Co.,* 365 S.W.2d 52, 55 (Mo.App. E.D.1963); *Mantz v. Southwest Freight Lines, Inc.,* 377 S.W.2d 414, 418 (Mo.1964); *Derr v. St. Louis Pub. Serv. Co.,* 399 S.W.2d 241, 244 (Mo.App. E.D.1965). But none of these cases even discuss, much less mandate, the reversal of a trial court decision finding that a juror's testimony about failing to understand a question was not credible.

Dr. Sabates also argues that the trial court should have found that any nondisclosure was unintentional because the record supports a finding that Juror Edwards forgot about the suit filed against him and that the suit was an insignificant event. Dr. Sabates points to case law reflecting that nondisclosure should be deemed unintentional where the juror forgot about the event and the event was insignificant. *See Portis,* 38 S.W.3d at 443.

Dr. Sabates contention is premised on at least three fundamental flaws. First, the record supports a finding that Juror Edwards did in fact remember being sued.

 Second, the trial court found that Juror Edwards testimony regarding why he failed to disclose this information was not credible. The trial court specifically found that Juror Edward's testimony during the hearing was "evasive, non-responsive and unbelievable." "The trial court's findings regarding whether a juror's explanation for nondisclosure during *voir dire* is reasonable are given great weight and will not be disturbed on appeal unless the trial court abused its discretion." *Redfield v. Beverly Health & Rehab. Servs., Inc.,* 42 S.W.3d 703, 708 (Mo.App. E.D.2001). Juror Edwards testified that he did not mention the suit against him because he had thought the question related to people he knew that had been sued and not to himself and that the suit against him did not come to mind because it had been so long ago. The trial court did not believe that testimony. The record does not establish that the trial court abused its discretion in making that credibility determination.

 Finally, questions and answers related to a venireperson's prior litigation experience are always deemed to be material and significant. *Portis,* 38 S.W.3d at 444. Consequently, the suit filed against Juror Edwards is deemed to be of such significance that any purported forgetfulness would be unreasonable.

 In short, the record amply supports a finding by the trial court that Juror Edwards understood the question and that he actually remembered the suit that had been brought against him at the time the question was asked. The trial court could reasonably have found that Juror Edwards intentionally failed to disclose his involvement in a prior lawsuit. "Bias and prejudice are presumed when a juror intentionally withholds material in-

formation" like involvement in prior litigation. *Id.* at 443–44. Accordingly, the trial court did not abuse its discretion in granting the Bells' motion for new trial. Point denied.

The trial court's grant of a new trial is affirmed, and the cause is remanded for new trial.[1]

HARDWICK, J., concurs.

HOLLIGER, J., concurs in separate opinion.

RONALD R. HOLLIGER, J., concurring.

I write separately only to point out that our decision today, although perhaps seeming to be contradictory of our recent decision in *Ewing v. Singleton,* 83 S.W.3d 617 (Mo.App. W.D. June 2002), is, in fact, totally consistent but for reasons that again demonstrate the problems created by too cavalier treatment by trial counsel and trial courts of juror voir dire in this sensitive and important area. Here, the juror admitted he understood the terms "claims" and "lawsuits." The court found his explanation for failing to respond evasive and the lack of response to be intentional. Although the trial court in *Ewing* thought the juror evasive, it also found that it understood how the question could be misunderstood and that the non-disclosure was not intentional.

In other words, within broad legal principles, each case is decided on its facts. As laudable as such legal review is, it is unfortunate and unnecessary to have to apply such a principle to the important and reoccurring issues regarding litigation experience of prospective jurors. It is only because of vague, indefinite, and casual questioning of jurors on this topic that we are forced to consider meaning as expressed, meaning in context, and whether jurors are evasive or acting intentionally or not. If lawyers will employ and trial judges will request more specific and careful questioning, otherwise error free trials will not have to be repeated so frequently.

---

**1.** Since the matter must be remanded for a new trial, we need not address the Bells' claim of instructional error during the first trial.