**David GROVES, Appellant,**

**v.**

**William J. KETCHERSIDE, Respondent.**

**No. WD 51324.**

Missouri Court of Appeals,
Western District.

Dec. 10, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 1997.

As Modified Jan. 28, 1997.

Application to Transfer Denied March 25, 1997.

John McKay, Kansas City, for appellant.

J. Michael Shaffer, Kansas City, for respondent.

SPINDEN, Presiding Judge.

David Groves sued William J. Ketcherside, a surgeon, for negligently performing surgeries on his neck. He contended that the surgeries were not medically necessary and that Ketcherside negligently failed to obtain all necessary X-rays before performing the surgeries. Groves asserted that the result of the negligence was a "swan's neck" deformity necessitating three plates and eight screws in his neck. A jury ruled for Ketcherside, and Groves appeals.

Groves asserts seven points on appeal, two of which relate to jury misconduct and five of which concern evidence admitted at trial. The first point is dispositive. We reverse and remand to the circuit court for a new trial. Because the evidentiary matters may arise on retrial, we address those, too.

### Juror Misconduct

In his first point, Groves contends that a venire person's failure to disclose during *voir dire* that he had an unfavorable ruling in a wrongful death action for the death of his wife was reversible error. We agree.

In 1982, the venire person sued a physician charging the doctor with wrongfully causing the death of his wife during childbirth. He also filed an individual claim for negligent infliction of emotional stress because he was in the operating room for the birth of his child and saw his wife suffer convulsions briefly before her death. A jury returned a verdict against him on both claims.

During *voir dire*, Groves' attorney said to the venire panel:

I'm going to be asking some more questions now and I would like to ask you for another favor. When I ask ... any of you a question or you as a group, I would like for you to include members of your immediate family, anyone that you're living in the same household with or members of your immediate family, such as husband, wife, children, parents that might live with you. This part of the trial is extremely important, the jury selection, because an answer that you may give now could be the basis of a reversal on appeal after both sides had spent two weeks bringing in experts from different parts of the country. Anything even unintentional on your part, if you forget something, that could be the basis for one side or the other to appeal. So, I want your courtesy in giving us your complete answers.

Later, Groves' attorney asked the panel a series of questions: "[I]s there anyone else here who feels that you or a member of your immediate family has been a victim of extreme or excessive medical treatment by a physician?" "Do any of you here ... feel that you've been treated improperly by some doctor in any way?" "How many of you have had something taken away from you that you didn't agree with, you didn't consent to, that wasn't your fault?" and "How many of you have had a medical condition go from bad to worse[?]" The venire person at issue in this case did not respond to any of these questions.

■■■ It is the duty of a juror on voir dire to fully, fairly, and truthfully answer all questions so that his qualifications may be determined and so that the attorneys may intelligently exercise preemptory challenges and challenges for cause. *Williams By Wilford v. Barnes Hospital*, 736 S.W.2d 33, 36 (Mo. banc 1987). "Both parties are entitled to unbiased jurors whose experiences, even innocently and reasonably undisclosed, will not prejudice the resolution of the cause." *Id.* A juror's nondisclosure can be intentional and unintentional:

Intentional nondisclosure occurs: 1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable.... Unintentional nondisclosure exists where, for example, the experience forgotten was insignificant or remote in time, ... or where the venireman reasonably misunderstands the question posed[.]

*Id.*

■■■ Whether a venire person's nondisclosure is intentional is significant. We infer bias and prejudice from a venire person's intentionally withholding material information which has been requested during *voir dire*. "[A] finding of intentional concealment has 'become tantamount to a per se rule mandating a new trial.'" *Williams* 736 S.W.2d at 37 (quoting *Frenette v. Clarkchester Corporation*, 692 S.W.2d 834, 836 (Mo. App.1985), and *Anderson v. Burlington Northern Railroad Company*, 651 S.W.2d 176, 178 (Mo.App.1983)). Unintentional nondisclosure, on the other hand, may not require a new trial. If the information not disclosed unintentionally is not connected to the case or does not bear on the prospective juror's ability to fairly evaluate the evidence, a new trial is not necessary. Even if the nondisclosure is unintentional and reasonable, a new trial may be necessary if the juror's serving on the jury did, or may have, influenced the verdict so as to prejudice the party seeking a new trial. "Prejudice is a determination of fact for the [circuit court], its finding to be disturbed on appeal only for abuse of discretion." *Id.*

In our case, the circuit court did not make any findings as to whether the venire person's nondisclosure was intentional or nonintentional. Ketcherside contends that because the circuit court did not hold an evidentiary hearing on Groves' allegations of juror nondisclosure and misconduct, this court has no factual basis on which to make findings of prejudice resulting from the non-

disclosure.[1] Ketcherside relies on *Peth v. Heidbrier*, 789 S.W.2d 859 (Mo.App.1990). In *Peth*, this court's Eastern District was faced with a juror misconduct issue, and it held:

> The trial court denied an evidentiary hearing on juror misconduct and misbehavior. Thus, there is no record for this court to review this assignment of error.... The question of law is whether the plaintiff is entitled to an evidentiary hearing on the authority of Rule 78.05. We conclude that he is.... We find no authority in the Rule for the trial court to deny counsel an opportunity to prove a factual matter by an evidentiary hearing with oral testimony.... Plaintiff complied with the procedural requirements for an evidentiary hearing by subpoenaing witnesses and requesting a hearing date. We find the court erred in refusing to grant an evidentiary hearing We remand to the trial court to hold a hearing and determine whether prejudicial error occurred justifying a new trial on plaintiff's request.

*Id.* at 862.

In this case, unlike in *Peth*, Groves submitted with his motion for new trial, and the circuit court admitted and included as part of the record for the motion for new trial, the court records concerning the venire person's lawsuit. Because Groves' motion did not depend on oral testimony like the *Peth* case, the circuit court was not required to hold an evidentiary hearing. In fact, Groves informed the circuit court in a letter when it filed the authenticated records of the juror's lawsuit that an evidentiary hearing was unnecessary. Moreover, because of the court records, we have a record to review to make a determination of prejudice on the nondisclosure.

We recognize that because the circuit court did not make any findings as to whether the venire person's nondisclosure of his lawsuit was intentional or unintentional, we can infer from the circuit court's denial of the motion for new trial that it found no prejudice. *See Stotts v. Meyer*, 822 S.W.2d 887, 891 (Mo.

App.1991). We however, find the circuit court abused its discretion in concluding that no prejudice occurred.

The juror's nondisclosure in this case amounts to an intentional nondisclosure. We find that based upon the questions asked there was no reasonable inability to comprehend the information solicited by the questions asked of the juror and any purported forgetfulness on the part of the juror about his lawsuit would be unreasonable. As we stated earlier, "[A] finding of intentional concealment has 'become tantamount to a per se rule mandating a new trial.'" *Williams*, 736 S.W.2d at 37 (citations omitted). Hence, because receiving a zero verdict in a wrongful death action could have a significant bearing on the venire person's ability to fairly evaluate the evidence, we reverse and remand for a new trial.

Ketcherside asserts that we should not reverse for a new trial because: (1) Groves' attorney did not ask a direct question which would have elicited the venire person's information about his lawsuit; (2) the venire person's lawsuit was too remote in time, occurring about 15 years previously; (3) the *voir dire* question asked about lawsuits involving members of the venire persons' family members, and, because the venire person's wife had died, she was no longer a member of his immediate family; and (4) Grove's questions during *voir dire* were vague and laden with subjective words. We disagree.

Although Groves' attorney did not ask directly whether any of the panel members had filed a personal injury lawsuit, we conclude that the questions asked were not vague and should have been sufficient to have caused the venire person to inform the court and attorneys of his lawsuit for his wife's death. Although 15 years is a long time, asserting that the venire person had forgotten his wife's death and subsequent lawsuit unduly taxes our credulity. *See Gillespie by Gillespie v. Goedecke*, 782 S.W.2d 467, 468 (Mo. App.1990). The suggestion that the venire person would have assumed that the questions did not pertain to his wife because she

---

1. Ketcherside raised this issue in his motion for rehearing. We granted the motion for rehearing to address this issue, among other things.

had died is unreasonable. We, therefore, reverse the judgment and remand to the circuit court for a new trial.[2]

## Evidentiary Matters

### Evidence of Ketcherside's Leave of Absence from Medical Profession

■ Groves complains that the circuit court abused its discretion by excluding evidence that Ketcherside had stopped performing surgeries and seeing patients at the time of trial. In particular, Groves asserts that Ketcherside opened the door to this evidence by telling the jury during direct examination that "spine problems are the bulk of what I do" and by Ketcherside's attorney telling the jury that this case would affect Ketcherside for the rest of his life and that Ketcherside was the one on trial and that his life was in the hands of the jury to decide. Groves complains that these comments misled the jury and were attempts to prejudice the jury in favor of Ketcherside by implying that Ketcherside would be forced to give up his medical practice if he were found negligent when he had already stopped seeing patients and performing surgeries.

In a motion for a protective order, Ketcherside asked the circuit court to deny any discovery surrounding Ketcherside's leave from the practice of medicine. The circuit court would not allow Groves to ask Ketcherside any questions concerning Ketcherside's leave of absence from the medical profession.[3]

We do not understand the relevance of whether Ketcherside was practicing at the time of trial. His not practicing at the time did not foreclose his returning to a practice. The comments by Ketcherside and his attorney did not open the door for questions in regard to Ketcherside's leave of absence from the practice of medicine. Groves' point is denied.

### Evidence of Groves' Leg and Ankle Being Broken at the Blue Springs Jail

At trial, Ketcherside introduced two exhibits concerning statements made by Groves to health care providers that his right leg and ankle had been broken in an assault or altercation at the Blue Springs jail. Ketcherside used the exhibits to cross-examine Groves' expert, Dr. John Oro, and to cross-examine Groves.

Groves asserts that the circuit court erred in admitting this evidence because it was highly inflammatory. Groves contends that where the injury was incurred was not essential for diagnosis and treatment of the injury; therefore, it was irrelevant and immaterial.

■ Groves, however, had told Oro that he broke his leg and ankle because he had shock-like sensations in his arm and back which caused him to lose his balance when walking down stairs. At trial, Ketcherside's attorney asked Oro, "And, in fact, what David Groves told you was that his broken ankle was the result of and his broken leg was the result of these shock sensations which apparently he started having because Dr. Ketcherside was negligent, right?" Dr. Oro responded affirmatively. Ketcherside also used the exhibits to cross-examine Groves about the disparity between the exhibits and his representations to Oro that he simply lost his balance and broke his ankle while walking down steps due to shock-like sensations.[4]

Because Groves attempted to establish liability against Ketcherside by telling Oro that he broke his leg and ankle because of the shock-like sensations which he attributed to his neck condition, we agree that this opened the door for use of the exhibits to establish that Groves made contradictory statements. *See St. Louis Southwestern Railway Company v. Federal Compress and Warehouse Company*, 803 S.W.2d 40, 45 (Mo.App.1990).

2. Because we reach this conclusion, we need not address Groves' remaining contention of error regarding juror misconduct.

3. Groves made an offer of proof which was made a part of the record.

4. Groves denied that he told Oro that he broke his leg by falling down stairs.

### Evidence That Groves' Original Injury Was Work Related

In his remaining points relied on, Groves complains that the circuit court erred in admitting evidence that Groves' original injury which caused him to consult Ketcherside resulted from an on-the-job injury at Groves' place of employment. Groves contends that where he incurred the injury was not essential to Ketcherside's diagnosis and treatment and that admission of the evidence implied workers' compensation benefits. We disagree.

 Medical history and cause of injury are relevant to a patient's diagnosis and treatment. *Breeding v. Dodson Trailer Repair, Inc.*, 679 S.W.2d 281, 285 (Mo. banc 1984). "[I]t would be only natural for a physician to consider the circumstance of the accident in arriving at a diagnosis. 'Certainly, some inquiry as to the cause of an injury is proper and necessary for intelligent treatment of a patient.'" *Id.* at 284–85 (citation omitted).

Groves cites *Jones v. St. Louis Housing Authority*, 726 S.W.2d 766, 775 (Mo.App. 1987), for the proposition that where a person sustains an injury is not relevant medical history. The *Jones* case, however, concerned a comatose patient who had been involved in an accident and unknown persons gave medical personnel the accident's history. The court ruled that the excerpts about the accident were inadmissible hearsay. *Id.* The *Jones* case is distinguishable in that Groves does not dispute that he was injured at work and that he told his physicians this.

Groves' real complaint is that because he was injured at work, the jury would imply that he had received workers' compensation. We agree that "[e]vidence that a plaintiff has received indemnity or compensation for an injury or loss from workers' compensation is ordinarily inadmissible because it is unrelated to liability or damages and may raise a false issue in the case." *Kenniston v. McCarthy*, 858 S.W.2d 268, 270 (Mo. App.1993). This rule does not prohibit evidence as to where the injury occurred so long as it is relevant. The jury did not hear evidence as to whether Groves received workers' compensation. Groves' contention is without merit.

### Conclusion

Because during *voir dire* a juror failed to disclose that he had lost a wrongful death jury trial for the death of his wife, we reverse the verdict and remand to the circuit court for a new trial.

SMART and EDWIN H. SMITH, JJ., concur.