Judith E. EWING, Appellant,

v.

David J. SINGLETON, et al., Respondent,

Harrah's North Kansas City Casino, Respondent.

No. WD 59763.

Missouri Court of Appeals, Western District.

June 25, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 25, 2002.

Application for Transfer Denied Sept. 24, 2002.

James Dean Walker, Jr., Kansas City, for Appellant.

Lance W. LeFevre, Douglas Robert Richmond, Kansas City, for Respondent.

RONALD R. HOLLIGER, Judge.

Judith Ewing appeals the circuit court's denial of her motion for a new trial. Ewing argues that a juror's nondisclosure regarding his son's involvement in an au-

tomobile accident requires a new trial. Because the question posed to the panel was not clear, there was no nondisclosure. We therefore affirm.

### Facts

Judith Ewing brought suit against respondents, Total Distribution, Inc., ("Total") and Harrah's–North Kansas City Corp. ("Harrah's") on her claims for personal injury sustained in December 1998 as the result of a vehicular accident with a truck belonging to respondent Total. The accident took place on Harrah's property. Ewing claimed that she was driving along a roadway when the truck pulled out in front of her. She contends that she attempted to stop but lost control due to accumulated snow on the roadway. She sought recovery against both respondents, due to the alleged failure of the truck driver to keep a careful lookout and the failure of Harrah's to remove the snow accumulation.

The case proceeded to a jury trial on November 27, 2000. After a jury verdict for the defendants, Ewing filed a motion for new trial alleging that one of jurors had failed to disclose that his son had been the driver in an accident that killed two other persons and seriously injured another. During voir dire, Ewing's counsel inquired of the panel whether any members of the panel, or their family members, had been sued by anyone else. There were no responses to that inquiry. Ewing's counsel also asked whether any members of the panel had filed suit against anyone else on a personal injury claim. Seven members of the voir dire panel answered affirmatively, but not juror Cesar.

Total's counsel later asked:

Have you or a member of your family ever been involved in an automobile accident that caused serious, permanent type injuries?

One panel member responded that her brother-in-law had been in an automobile accident some years ago that resulted in injuries to him requiring hospitalization. Counsel asked her:

Is there anything about that experience, where you have had a relative that sustained some serious injuries in an automobile accident, that might make you more sympathetic than perhaps others to the plaintiff in this case, where we are going to acknowledge there were some serious injuries?

Total's counsel then asked the entire panel:

Anyone else who has been in an accident, or a member of your family, let's say with injuries where you have been in the hospital for a number of days?

Another panel member described an accident in which she and her aunt were involved. The aunt was hospitalized and was rendered permanently unable to walk as a result of her injuries. Counsel asked this panel member:

Is there anything about that experience . . . that you think might tend to make you more sympathetic to a plaintiff in a case like this where there's really no dispute but there were some serious injuries involved?

Counsel then asked the panel:

Are there any other jury panel members who yourself or a member of your immediate family, someone close to you, has been involved in an automobile accident that caused some serious injuries?

A third panel member reported that his sister had been involved in an accident with a Kansas City Police Department officer and was suffering from temporary blindness. Counsel asked him:

Is there anything that being in your background that would tend to possibly

to make you more sympathetic to a plaintiff who sustained some serious injuries in an automobile accident than other folks?

Juror Cesar did not respond to any of the questions posed to the panel, and after *voir dire,* he was selected for the final jury panel. At the conclusion of trial, the jury resulted a verdict in favor of Total and Harrah's. Ten of the twelve jurors signed the verdict, including juror Cesar.

Ewing filed a motion for new trial, alleging, *inter alia,* that she was entitled to a new trial due to intentional nondisclosure by juror Cesar. Ewing contended that Cesar intentionally failed to disclose that his son had been involved in an automobile accident on August 13, 2000. Cesar's son, Jeremiah, was uninjured in the accident, but there were multiple fatalities and serious injuries among the other individuals involved. Suit was filed against Jeremiah regarding that accident approximately six days before the beginning of voir dire in the present matter.[1]

An evidentiary hearing was held upon Ewing's motion for new trial. Ewing called the police officer responsible for filing the accident report for the collision in which Jeremiah was involved. The officer testified regarding the nature of the accident and that there was one fatality at the scene and another person later died at the hospital. Ewing also called juror Cesar to the stand to testify at the hearing. Cesar contended that he did not respond to the voir dire questioning because he did not know for certain whether there were any serious injuries resulting from the accident, and claimed that he did not consider deaths to be injuries. He also testified that he thought the questions were only intended to reveal whether he or members

of his family had sustained injuries, not whether he or members of his family had caused injuries. The last witness to testify at the hearing was Jeremiah Cesar. He testified that he told his father on the night of the accident that people had been killed. He also testified that his father showed him newspaper articles regarding the accident and took him to see a lawyer a week or two after the accident.

After hearing the evidence put forward by the parties, the trial court observed in its order that "Mr. Cesar's demeanor was clearly one of an individual, not happy about being summoned to court and reluctant to state details of his son's accident, to the point that his responses were evasive." The trial court found that Cesar believed that the questions pertained only to accidents resulting in injuries suffered by the venirepersons or members of their family. The trial court made no explicit finding that the questions posed to the panel were clear but concluded that "[g]iven the responses that were made by the other jurors, to this and other similar questions, it is reasonable for Mr. Cesar to have misunderstood the question, and therefore, his failure to respond was not intentional." The trial court did not address the issue of whether Cesar's failure to respond was an unintentional nondisclosure that was also material or prejudicial.

Based upon these findings, the trial court denied Ewing's motion for new trial.

### Analysis

 Nondisclosure cannot occur if the question asked of the panel was not clear. *Wingate v. Lester E. Cox Med. Ctr.,* 853 S.W.2d 912, 916 (Mo. banc 1993). Although we apply an abuse of discretion

---

1. At the time of *voir dire,* juror Cesar's son had not been served with the petition in that case.

standard to the trial court's determination that an intentional or unintentional nondisclosure occurred, we review the threshold determination of the clarity of the question *de novo*. *Keltner v. K–Mart*, 42 S.W.3d 716, 723 (Mo.App.2001).

■■■ Our Constitution guarantees the right to a fair and impartial jury, composed of twelve qualified jurors. Mo. Const. art. I, § 22(a); *Beggs v. Universal C.I.T. Credit Corp.*, 387 S.W.2d 499, 503 (Mo. banc 1965). The members of the panel, therefore, have a duty to "fully, fairly and truthfully" answer all questions put to them individually and the panel generally. *Williams v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo. banc 1987).

■■■ A panel member's failure, after a clear question, to provide the requested information, can constitute either intentional or unintentional nondisclosure. Intentional nondisclosure occurs when the panel member has no reasonable inability to understand the question and either actually remembers the experience or the purported forgetfulness is unreasonable. *Wingate*, 853 S.W.2d at 916. Unintentional nondisclosure occurs when the panel member has forgotten the experience, or it was insignificant or remote in time, or when the panel member reasonably misunderstands the question posed. *Id.*

■■■ Absent a clear question, however, a panel member's failure to provide information cannot constitute an intentional or an unintentional nondisclosure. *Id.* The trial court in the instant case did not make an explicit finding regarding the clarity of the question asked on voir dire.

■■■ A question posed to the panel on voir dire is clear only if a lay person would reasonably conclude that the undisclosed information was solicited by the question. *Keltner*, 42 S.W.3d at 726. The interpretation depends on the context of the question as well as the wording of the question. *Id.* In the instant case, the context of the question reasonably indicated to Cesar, as the trial court found, that Total's counsel was not interested in injuries caused by panel members or their family members. Three panel members responded to the questions about injuries resulting from automobile accidents. All three indicated that a family member had sustained an injury. After each response Total's counsel followed up by asking the panel member whether his or her experience might result in excessive sympathy for the plaintiff. In this context, Cesar reasonably believed that Total's counsel was not interested in circumstances (such as having caused injuries) that might make him sympathetic to the defendants.

■■■ There has been considerable controversy and litigation in past years about nondisclosures by potential jurors of what is generically called "litigation experience." Both plaintiff's counsel and the defense bar have criticized post-trial investigations of jurors but have also undertaken such investigations. A number of cases have required retrial because of nondisclosure. Jurors and judges have found the investigations, process, and hearings distasteful. Nevertheless, as every seasoned trial lawyer knows, "prior litigation" experience is vitally important, not only in exploring for bias and disqualifying for cause, but for preemptory challenges as well. As distasteful as this process is, it is outweighed by the fundamental right of each party to a trial by fair and impartial jurors.

Given that vital right and the importance to counsel of prior litigation experience, one would expect that counsel, and even the courts, would stress to jurors the vital importance of full and truthful answers that might even provide information beyond the apparent intent of the ques-

tion. One would expect counsel and the courts to encourage jurors to volunteer information if they are in doubt as to its relevance. One would also expect that counsel and trial courts would endeavor to ask questions so clear and specific that there could be no confusion about their meaning or the information sought. Unfortunately that is not always the case. Too often the questions about prior litigation experience are asked casually or even mundanely with little emphasis and without noting to the jury the importance of the response.

The term "family member" or "immediate family" is used without definition. Counsel use the terms "sued" or "claims" interchangeably and as though they had the same meaning to laymen as to lawyers. How many times has a juror answered negatively (or not answered at all) to a question about "suits" because her case settled out of court? Or believed that he hasn't sued or made a claim against anyone because he settled with the insurance company? The result is quibbling between counsel and the juror at a post-trial hearing about whether death is a serious personal injury.

 Counsel for Ewing acknowledges that the question was "open-ended" as if open-ended were the ideal form of this question. Although open-ended questions have considerable value in voir dire, they are not helpful in this area. Specific, clearly defined questions in this area using terms as would be understood by laymen will go a long way towards actually identifying bias or potential bias **before** trial rather than afterwards. Although the responsibility is initially that of counsel, there is nothing inherently improper in a trial court taking reasonable steps to encourage emphasis on importance, clarity, and specificity.

The question asked here was capable of two constructions. Because the question was not clear, Cesar's failure to reveal information about his son's accident did not constitute an intentional or unintentional nondisclosure. The circuit court's denial of Ewing's motion for a new trial is therefore affirmed.

LISA WHITE HARDWICK, Presiding Judge, and JOSEPH M. ELLIS, Judge, concur.