

# Missouri Court of Appeals

## Southern District

### en banc

| | | |
|---|---|---|
| SHERRY SPENCE, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD34100 |
| | ) | Filed: December 27, 2016 |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

### APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY

Honorable Stephen R. Mitchell, Judge

## REVERSED AND REMANDED

Scott Spence was killed when a BNSF train struck his pickup at a rural crossing. His wife Sherry ("Plaintiff") sued for wrongful death.

During voir dire, BNSF's attorney asked potential jurors whether they or a close family member had been in a motor vehicle accident. Some spoke up, but not panelist Cornell, whose son had died in an auto accident. BNSF's attorney talked with the responding panelists, then asked again: "Anybody else that I've missed, who's been in an automobile accident that we haven't already talked about, or had a close friend or family member, other than what we've already heard from today?" Another panelist answered that her daughter had been in several auto accidents. Ms. Cornell

again stayed silent. She made the jury and ultimately joined nine other jurors in awarding Plaintiff $19 million dollars.

After trial, the court rejected without explanation all juror-nondisclosure claims asserted by BNSF. One of BNSF's six points on appeal challenges this ruling as to Juror Cornell and the auto-accident questions. We need not reach any other point. The auto-accident questions were sufficiently clear, so Juror Cornell was duty-bound to answer them fully, fairly, and truthfully. ***J.T. ex rel. Taylor v. Anbari***, 442 S.W.3d 49, 56 (Mo.App. 2014). Her intentional nondisclosure raises a presumption of prejudice (***id***.) which Plaintiff does not even claim to have overcome. We must reverse and remand for a new trial.

### Legal Principles

"Evaluation of a nondisclosure claim involves two steps." ***Id***. The threshold issue is whether the question was sufficiently clear. ***Id***. If not, there has been no nondisclosure and the inquiry can end. ***Id***. This court evaluates *de novo* the threshold issue of question clarity. ***Id***.

If the question *was* clear, step two is to determine whether the nondisclosure was intentional. ***Id***. If so, prejudice is presumed; otherwise, the party seeking relief must show prejudice. ***Id***. We review these findings, if any, for abuse of discretion. ***Id***.

### Analysis

BNSF's auto-accident questions were sufficiently clear in context despite

2

Plaintiff's protests to the contrary,[1] and to Plaintiff's credit, she never even suggests

---

[1] We have bolded all auto-accident questions, but begin by quoting earlier BNSF questions that Plaintiff claims make the bolded questions unclear:

[BNSF's COUNSEL]: Who here drives a pickup truck? Lots of folks. Who here drives a single cab pickup truck, as opposed to extended cab? A few of you. I think there will be testimony in this case, talking about an A-pillar or a B-pillar. I'm not going to get into all the details with you at this point about that, but we anticipate that there might be testimony with regard to the truck that Scott Spence was driving and the pillars on the truck, the windshield area and then it was a single cab, the area there by the passenger side window.

Anyone ever had an experience driving a pickup truck where those pillars in any way obstructed your view? Okay. I'm seeing some hands.

[*Discussions with individual panelists omitted*]

[BNSF's COUNSEL]: What about anyone else who's had an issue with a pillar and a pickup truck?

**Okay. Anyone else who's been in an automobile accident, a motor vehicle accident, or had a close family member who has?**

Yes, ma'am, Number 24, Ms. Fees? Can you tell me just basically what the circumstances were?

MS. FEES: Well, it was just maybe a quarter of a mile from my house, and a lady pulled out in front of me, and I don't know -- she was in a Chevy Avalanche, and I don't know if she experienced a blind spot in the same -- but she just pulled out in front of me and I couldn't stop.

[*Further discussion with Ms. Fees omitted*]

[BNSF's COUNSEL]: **Anyone else who's been in an auto accident?** Yes, sir, Number 58, Mr. Mattingly?

MR. MATTINGLY: I've been in two automobile accidents. One, the person pulled directly in front of me and I couldn't stop, and hit them. The other one was my fault, I hit them. I misjudged the car that was coming down the road --

[*Further discussion with Mr. Mattingly omitted*]

[BNSF's COUNSEL]: Yes, ma'am, Number 72, is it Niswonger?

MS. NISWONGER: Uh-huh.

[BNSF's COUNSEL]: Okay.

MS. NISWONGER: A lady ran into the next car while -- I was stopped in the lane, and I was in that also.

[BNSF's COUNSEL]: I'm sorry to hear that. She clearly wasn't paying attention.

MS. NISWONGER: I was making a left turn into a business, and I was hit broadside. I'm not sure where that lady came from.

[BNSF's COUNSEL]: Okay.

MS. NISWONGER: But I don't think it would affect this.

[BNSF's COUNSEL]: Okay. Thank you, ma'am. **Anybody else that I've missed, who's been in an automobile accident that we haven't already talked about, or had a close friend or family member, other than what we've already heard from today?**

3

that Juror Cornell's nondisclosure was anything but intentional, and thus presumptively prejudicial. *Id*. Even if we inferred from the trial court's ruling that it found no prejudice, we would find abuse of discretion. *Compare* **Groves v. Ketcherside**, 939 S.W.2d 393, 396 (Mo.App. 1996), where, as here, there was no trial court finding whether nondisclosure was intentional or unintentional, but any inference that the trial court found no prejudice was rejected (abuse of discretion) because the questions were clear and any purported juror "forgetfulness" would be unreasonable. *Id*.

The same holds true for Juror Cornell, her son's auto-accident death, and BNSF's auto-accident questions. "[T]he questions asked were not vague and should have been sufficient to have caused [Juror Cornell] to inform the court and attorneys of [her son's fatal auto accident]." *Id*. That she would have forgotten her son's fatal auto accident "unduly taxes our credulity." *Id*.[2]

A presumption of prejudice thus arises (***J.T. ex rel. Taylor***, 442 S.W.3d at 56) that Plaintiff makes no real effort to overcome. Instead, Plaintiff asserts that a second Case.net search would have revealed Juror Cornell's lawsuit for her son's death, so Missouri Court Rule 69.025 (2015) should waive any complaint that Juror

Yes, ma'am, is it Blankenship?

MS. BLANKENSHIP: Yes. My daughter has totaled --

[BNSF's COUNSEL]: I'm sorry. She has what?

MS. BLANKENSHIP: Totaled three cars.

[BNSF's COUNSEL]: Oh, my goodness. I wouldn't want to be dealing with that situation. I'm sorry to hear that. Anything about that experience, other than being her mother, that would make it difficult for you to sit in this case?

MS. BLANKENSHIP: I wish she was a better driver, but, no.

[2] We reach these conclusions without considering Juror Cornell's other nondisclosures documented post-trial and raised in another BNSF point, the merits of which we need not address.

4

Cornell did not answer voir dire questions about auto accidents.[3] We cannot read Rule 69.025 so broadly.

Rather, we share our Western District's view that Rule 69.025, like its case-predecessor **Johnson v. McCullough**, 306 S.W.3d 551 (Mo. banc 2010), addresses and expressly relates "to juror nondisclosure on the topic of *litigation history* only." **Khoury v. ConAgra Foods, Inc.**, 368 S.W.3d 189, 202 (Mo.App. 2012). Likewise, we agree that

> the day may come that technological advances may compel our Supreme Court to re-think the scope of required "reasonable investigation" into the background of jurors that may impact challenges to the veracity of responses given in voir dire *before* the jury is empaneled – [but] that day has not arrived as of yet.

**Id**. at 203.[4]

### Conclusion

With comparable regret, we borrow the words of our supreme court:

> Under the circumstances of this case, we are constrained to reverse and order a new trial. We are fully aware that this regrettable situation was not one of respondent's making. We fully appreciate the apparent harshness of the remedy. Yet, as we have said, the fair and impartial operation of the jury is a guarantee to which every litigant rightfully makes claim. Until a better solution is found, we are left with no option but to deal harshly with a venireman's disregard for his responsibilities as a potential juror.

---

[3] Per oral argument and the record as we must view it, the parties did their pretrial Case.net searches from a jury list that misspelled Juror Cornell's name ("Carnell"). A clerk notified a lawyer for each side of this error just before or after the panelists were seated for voir dire, but no one became aware of what a Case.net search for "Kimberly Cornell" would have yielded until after the trial.

[4] The dissent's view, naturally and logically extended, would force litigants not merely to check Case.net litigation histories, but to open and examine documents filed in each listed case. Such duty here would have implicated many documents for Juror Cornell alone, let alone all other panelists. It seems more effective and efficient to ask an auto-accident question to the assembled panel, especially when Case.net may not reveal serious accidents involving close relatives or friends, or which occurred outside Missouri, or which did not result in Missouri litigation.

Only a new trial will preserve inviolate appellant's constitutional entitlement to a fair and impartial jury.

***Williams by Wilford v. Barnes Hosp.***, 736 S.W.2d 33, 39 (Mo. banc 1987). Declining to address other points which may not recur on retrial, we reverse the judgment and remand the case for further proceedings.


DANIEL E. SCOTT, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS IN PRINCIPAL OPINION

GARY W. LYNCH, J. – CONCURS IN PRINCIPAL OPINION

DON E. BURRELL, J. – CONCURS IN PRINCIPAL OPINION

WILLIAM W. FRANCIS, JR., J. – CONCURS IN PRINCIPAL OPINION AND FILES SEPARATE CONCURRING OPINION

NANCY STEFFEN RAHMEYER, J. – DISSENTS BY SEPARATE OPINION

MARY W. SHEFFIELD, C.J. – CONCURS IN DISSENTING OPINION


En banc


SHERRY SPENCE,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff-Respondent,　　　　　)
　　　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　　　)　　　No. SD34100
　　　　　　　　　　　　　　　　　　　　)　　　Filed:  December 27, 2016
BNSF RAILWAY COMPANY,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant-Appellant.　　　　　)
　　　　　　　　　　　　　　　　　　　　)

APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY

Honorable Stephen R. Mitchell, Circuit Judge

## CONCURRING OPINION

I concur in the majority opinion and write separately to note ample evidence in the record before us to conclude there was intentional nondisclosure by Juror Cornell.

While the failure to affirmatively respond to the auto-accident questions is sufficient for reversal, there were other incidences in the record in which Juror Cornell was required, while under oath, to affirmatively respond and failed to do so.

Prior to trial, juror questionnaires were mailed to each prospective juror, including Juror Cornell.  She was required to complete the forms by swearing/affirming under penalty of perjury.

1

Two of the questions in the juror questionnaire pertained to prior lawsuits and recovery of monies for physical injuries or property damage. Question 14 asked, "Have you or any member of your immediate family been a party to any lawsuit (as a plaintiff or defendant, not merely as a witness)?" Question 15 asked, "Have you ever made a claim or had a claim made against you to obtain or recover money, either for physical injuries or for damage to property?" Juror Cornell answered "No" to both questions, even though her son had been killed in a car accident, and she had been the plaintiff in a wrongful death action arising out of the accident. Juror Cornell was also involved in eight other cases, including several suits on account, breach of contract, an application for protective order, and a guardianship regarding Juror Cornell's minor son. Of these cases, four were dismissed, two resulted in default judgments against Juror Cornell, one resulted in an ex parte order of protection against Juror Cornell, and one terminated her son's guardianship.

After the venirepersons were sworn to tell the truth, the trial court emphasized to all potential jurors the importance of knowing a juror's litigation history, and specifically admonished and questioned the panel about any information that might not have previously been disclosed on the juror questionnaires:

> Let me remind everyone that under Missouri law, a juror's failure to disclose his or her litigation history is presumed to be prejudicial. So in view of the time and expense involved in preparing for a jury trial and considering the sacrifices that you jurors endure to make this trial possible, we need to know whether any of you have been involved in any prior or civil court cases or lawsuits in order to determine whether those might be relevant today in this case. Is there anyone on the panel who has been a party to a criminal or civil court case or lawsuit that you have not already disclosed on the juror questionnaire that was mailed to you ahead of time?

Juror Cornell did not respond to this inquiry.

There were three discrete instances in time where Juror Cornell was asked questions that she either answered falsely, or wrongfully remained silent while under oath. Our jury trial system

2

requires venirepersons to answer questions truthfully and accurately, and the trial court and parties have a right to expect truthful answers. The record before us strongly suggests Juror Cornell intentionally failed to disclose the information requested of her.

WILLIAM W. FRANCIS, JR., J. – CONCURRING OPINION AUTHOR



# Missouri Court of Appeals

## Southern District
### en banc

SHERRY SPENCE,                          )
                                        )
      Plaintiff-Respondent,       )
                                        )
vs.                                     )     No. SD34100
                                        )
BNSF RAILWAY COMPANY,                   )     **Filed: December 27, 2016**
                                        )
      Defendant-Appellant.        )
                                        )

APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY

Honorable Stephen R. Mitchell, Circuit Judge

**DISSENTING OPINION**

I must dissent from the majority and concurring opinions. The only issue decided by the majority opinion is whether the trial court abused its discretion in denying Defendant's request for a new trial based upon the "nondisclosure" of a potential juror to a question during voir dire whether she or a close family member had been in a motor vehicle accident. I disagree with the majority for two reasons. First, I believe Defendant cannot be allowed to benefit from the failure

1

to follow Rule 69.025.[1]  The majority[2] finds that Rule 69.025 does not apply because the question during voir dire does not involve "litigation history."  In fact, this entire issue has been raised because the search for litigation history on Case.net after the trial revealed that Juror Cornell participated in a wrongful death settlement (only shown on Case.net by one document which is not signed by Juror Cornell) involving her son.  We have no idea about any of the specifics of the accident.  I believe the claim raised by Defendant is exactly the type of claim that Rule 69.025 was enacted to curtail, i.e., an after-trial complaint of juror nondisclosure of a matter that would have been discovered had Defendant used due diligence by searching Case.net.

The majority makes the determination, without an opportunity to be present for the questioning during voir dire or allowing for an evaluation by the trial court of the credibility of the juror, that, as a matter of law, a single question (asked twice in slightly different ways) was sufficiently clear and that the nondisclosure by the juror was intentional.  I do not think that is our function as an appellate court of review.  Defendant had an opportunity to question the juror to ascertain the reasons for the nondisclosures in a post-trial hearing, but chose not to do so.  The question, in context, could very well have been understood in a very different manner.  The juror could have missed the question in the context of all the other questions or misunderstood it.

### Standard of Review

Absent an abuse of discretion, an appellate court will not disturb the trial court's ruling on a motion for new trial based upon juror nondisclosure. *Johnson v. McCullough*, 306 S.W.3d 551, 555 (Mo. banc 2010). A trial court abuses its discretion only if its ruling "is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice

---

[1] All rule references are to Missouri Court Rules (2016).

[2] The concurring opinion cites to several litigation history examples to support the conclusion that the disclosure was intentional.  Clearly, Rule 69.025 would prevent any claim of a failure to seek relief on the basis of litigation history.

2

and indicate a lack of careful consideration." *Wingate by Carlisle v. Lester E. Cox Medical Center*, 853 S.W.2d 912, 917 (Mo. banc 1993).

. . . .

If nondisclosure is established, the next step is to determine whether it was intentional or unintentional. *Id.* "This determination is left to the sound discretion of the trial court." *Id.* Intentional nondisclosure occurs when: (1) there is no reasonable inability of the prospective juror to comprehend the information solicited by the question; and (2) the prospective juror actually remembers the experience, or it was of such significance that his or her purported forgetfulness is unreasonable. *Id.* at 295–96; *Williams By and Through Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo. banc 1987). . . . If the nondisclosure was unintentional, a new trial is not warranted unless prejudice resulted from the nondisclosure. *Johnson*, 306 S.W.3d at 557.

*Shields v. Freightliner of Joplin, Inc.*, 334 S.W.3d 685, 691-92 (Mo.App. S.D. 2011).

## Rule 69.025

As stated above, I believe Rule 69.025 controls the issue in this case. Rule 69.025 is entitled "Juror Nondisclosure," not "Prior Litigation Nondisclosure." This rule was enacted to limit sandbagging[3] and the uncertain and incongruous results from the prior line of cases. Appellate courts are no longer required to engage in speculation about trial strategy. As noted by this Court, "in Missouri's state courts as perhaps nowhere else, nondisclosure claims have become a powerful weapon in the hands of a verdict loser, plaintiff or defendant[.]" *Matlock v. St. John's Clinic, Inc.*, 368 S.W.3d 269, 274 (Mo.App. S.D. 2012) (internal quotation and citation omitted).

---

[3] Since Case.net disclosed that Juror Cornell was paid $25,000 dollars on the death of her son, perhaps she would see that as a reasonable amount for the death of a child. In this particular case, it can be argued that Defendant, after doing a litigation history search, may have determined that this juror would be a good juror on the issues of damages.

3

Prior to Rule 69.025, as noted in *Williams By and Through Wilford v. Barnes Hosp.*, 736 S.W.2d 33 (Mo. banc 1987), there were many cases dealing with jurors' false or erroneous answers regarding litigation history in voir dire. *Id.* at 40.

> Many Missouri cases are collected and analyzed in the ALR annotation *to Anderson v. Burlington Northern R.R.*, 651 S.W.2d 176 (Mo.App.1983). 38 ALR 4th 255–332 (1983), *Effect of Juror's False or Erroneous Answer on Voir Dire in Personal Injury or Death Action as to Previous Claims or Actions for Damages by Himself or His Family*. Some of the same cases are cited by the parties to reach opposite conclusions. This seeming incongruity is only facial and is explained by each of these cases being decided upon its own facts and by reasonable persons differing about just what inferences from a given set of facts are reasonable.

*Id.*

The pattern of juror nondisclosure of litigation history in cases continued, prompting the Supreme Court to address the issue in *Johnson v. McCullough*, 306 S.W.3d 551 (Mo. banc 2010), where the court was presented with a fact scenario almost identical to the facts in this case. A juror was accused of intentionally failing to disclose a litigation history in questions during voir dire. *Id.* at 555-56. The trial court granted a new trial and, in affirming that grant, our Supreme Court stated:

> This Court cannot convict the trial court of error in following the law in existence at the time of trial. . . . Further, there was no evidence that it was practicable for the attorneys in this case to have investigated the litigation history of all of the selected jurors prior to the jury being empanelled . . . .
>
> However, in light of advances in technology allowing greater access to information that can inform a trial court about the past litigation history of venire members, it is appropriate to place a greater burden on the parties to bring such matters to the court's attention at an earlier stage. Litigants should not be allowed to wait until a verdict has been rendered to perform a Case.net search for jurors' prior litigation history when, in many instances, the search also could have been done in the final stages of jury selection or after the jury was selected but prior to the jury being empanelled. Litigants should endeavor to prevent retrials by completing an early investigation. Until a Supreme Court rule can be promulgated to provide specific direction, to preserve the issue of a juror's nondisclosure, a party must use reasonable efforts to examine the litigation history on Case.net of those jurors selected but not empanelled and present to the trial court any relevant

information prior to trial.[4]  To facilitate this search, the trial courts are directed to ensure the parties have an opportunity to make a timely search prior to the jury being empanelled and shall provide the means to do so, if counsel indicates that such means are not reasonably otherwise available.

> [4]Because Case.net is not an official record, this Court recognizes its limitations. First, Case.net may contain inaccurate and incomplete information. Second, Case.net may have limited usefulness in searches involving common names or when a person's name has changed. Until a more specific rule is promulgated, the trial court must determine whether a party has made a reasonable effort in determining a juror's prior litigation history by searching Case.net. Searches of other computerized record systems, such as PACER, are not required.")

*Id.* at 558-59.

Subsequent cases have noted the admonishment to future parties in jury-tried cases:

The ***Johnson*** court, however, admonished future parties to jury-tried cases—in dictum—not "to wait until a verdict has been rendered to perform a Case.net search for jurors' prior litigation history when, in many instances, the search also could have been done in the final stages of jury selection or after the jury was selected but prior to the jury being empanelled." [306 S.W.3d] at 559.  Noting the advances in technology, the court stated that "[u]ntil a Supreme Court rule can be promulgated to provide specific direction, to preserve the issue of a juror's nondisclosure,[] a party must use *reasonable efforts* to examine the *litigation history* on Case.net of those jurors selected but not empanelled and present to the trial court any relevant information prior to trial." *Id.* at 559 (emphasis added).

In short, *Johnson* reflects a concerted effort by the Missouri Supreme Court to address timely and reasonable investigation of the *litigation history* of potential jurors.  It is no coincidence that when the Supreme Court later promulgated a rule—Rule 69.025—the rule was expressly related to juror nondisclosure on the topic of *litigation history* only . . . .

. . . "We encourage counsel to make such challenges *before submission of the case* whenever practicable." *McBurney v. Cameron*, 248 S.W.3d 36, 41 (Mo.App. W.D.2008) (emphasis added).  It is, of course, no coincidence that section 494.485 mandates that alternate jurors shall replace jurors who, *prior to the time the jury retires to consider its verdict*, are determined by the trial court to be unable or *disqualified* to perform their duties.

***Khoury v. ConAgra Foods, Inc.***, 368 S.W.3d 189, 202-03 (Mo.App. W.D. 2012).

After ***Johnson***, the Supreme Court did promulgate Rule 69.025. Rule 69.025, entitled Juror Nondisclosure, states in relevant part: "(b) Reasonable Investigation. For purposes of this Rule 69.025, a 'reasonable investigation' means review of Case.net before the jury is sworn." Rule 69.025(b)

Pursuant to the rule, the issues then for the trial court were whether Defendant in this case performed a reasonable investigation, meaning, a review of Case.net before the jury was sworn, and whether the court gave all parties an opportunity to conduct a reasonable investigation into whether Juror Cornell had been a party to litigation.[4]

At this time, subsection (e) comes into play. Subsection (e) states:

(e) Waiver. A party waives the right to seek relief based on juror nondisclosure if the party fails to do either of the following before the jury is sworn:
(1) conduct a reasonable investigation; or
(2) If the party has reasonable grounds to believe a prospective juror has failed to disclose that he or she has been a party to litigation, inform the court of the basis for the reasonable grounds.

Rule 69.025(e).

In this case, the trial court found the testimony of the clerk of the court to be credible. The clerk of the court testified that Defendant had the correct name of the juror prior to voir dire and that the courtroom had access to Wi-Fi prior to and during the trial. This matter was tried from April 20 through 28th. Additionally, after the trial, Defendant brought numerous motions, including a motion for recusal. A hearing was scheduled on July 28, 2015, before a second judge to determine if the trial judge should be disqualified for after-trial motions. Defendant did not appear at the date of the hearing although Juror Cornell did appear and was available for

---

[4] There is no dispute in this case that neither Plaintiff nor Defendant requested additional time to conduct a search or for further post-trial hearing. The trial court found that Juror Cornell had been hospitalized on the day of the hearing but was discharged on August 21, 2015, and that Defendant did not request any further post-trial hearing.

6

questioning.  Although Juror Cornell was hospitalized on the date of the hearing for the motion of Defendant for juror nondisclosure, the trial court found that although the juror was absent from the hearing due to hospitalization, she was discharged "with no further hearing having been requested by Defendant."

Apparently, at no time during the trial did Defendant conduct a Case.net search on Juror Cornell.  There were several alternates who would have been able to participate in the deliberations had the claimed nondisclosure been brought to the court's attention.  Rule 69.025 governs the issue of juror nondisclosure for a question asked during voir dire that would have been resolved with a reasonable investigation, i.e., a Case.net search.  We must accept then that Defendant did neither of the two options available under Rule 69.025(e).[5]  If Defendant did neither, it has waived the right to seek relief based on juror nondisclosure regarding Juror Cornell's litigation history.  Had the litigation history search been conducted as mandated by the rule as to what constitutes a "reasonable investigation," then Defendant would have had the opportunity to follow the provision in Rule 69.025 and inform the court of its reasonable belief that a juror had not fully disclosed her son's accident.  It is Defendant who did not do a reasonable investigation as defined by Rule 69.025 and cannot now claim relief for its failure to follow the rule.

---

[5] The court heard testimony from only one of the attorneys that represented Defendant and found her testimony to be "credible in part" and "not credible in part."  Even if we assume the court found that attorney's testimony to be credible that she did not have a conversation with Ms. Wheeler, the other defense attorney did not testify.  It is certainly a reasonable inference in the light most favorable to the ruling that the other attorney may have received the corrected spelling of the juror's name.

7

Further, I am not convinced that, even if Rule 69.025 does not apply to this question during voir dire, Defendant is entitled to relief. First, it is Defendant that must show the question, **in context**, was clear.

### Clarity of the Question and Intentional Nondisclosure

I am the first to admit that there does not seem to be a "clear" definition of what a "clear" question is. As noted in the earlier section, problems with that determination created the need for a rule on at least one aspect of voir dire questioning—past litigation. The cases come to the court's attention, however, on the clarity of questions asked during voir dire. For instance, the questions, "Anybody else had any experience where you or a member of your family or close friend has been treated in your veins or your arteries with stents? Anybody had that experience?", seem straightforward. *J.T. ex rel. Taylor v. Anbari*, 442 S.W.3d 49, 55 (Mo.App. S.D. 2014). When a potential juror failed to respond that both she and her husband had indeed received arterial stints, however, the questions were found to be unclear based on the shifting context of the prior questions. *Id.* at 56. The juror testified at the post-trial hearing that she did not even remember the question. *Id.* at 55-56. She testified that she misunderstood the question and was not trying to hide the information. *Id.* The trial court found the juror to be credible and denied a motion for a new trial based on the nondisclosure. *Id.* This Court, based upon the entire transcript of proceedings, determined that the trial court did not abuse its discretion in finding that the question was not clear and in finding the nondisclosure was not intentional. *Id.* at 56-57.[6]

---

[6] At this juncture, I must note Judge Holstein's caution regarding answers to litigation questions in voir dire:

> To a lawyer, the precise question asked during voir dire seems simple and clear: "Do we have anyone here on the panel who is now or has been a defendant in a lawsuit?" The record

In another case with facts strikingly similar to the facts of this case, ***Ewing v. Singleton***, 83 S.W.3d 617 (Mo.App. W.D. 2002), the question asked was whether any members of the panel, or their family members, had been sued by anyone else. ***Id.*** at 619. Counsel also asked if any members of the panel had filed suit against anyone else on a personal injury claim. ***Id.*** A potential juror did not respond to any of the questions posed to the panel and was subsequently selected for the jury panel. ***Id.*** at 620. Ewing's motion for new trial alleged that said juror's nondisclosure was intentional as his son had been involved in an automobile accident in which there were multiple fatalities and serious injuries among others involved. ***Id.*** Ewing's motion for new trial was denied. ***Id.*** Although the court made no specific finding whether or not the questions were clear, the court stated, "[g]iven the responses that were made by the other jurors,

discloses no hands were raised. That in itself is remarkable. In today's litigious and highly regulated society, to have any randomly selected group of twenty or more persons, none of whom has ever been a "defendant in a lawsuit," would defy all laws of probability. For such a group to answer the question in the negative would, in a technical sense, mean that none had ever been involved with a parking ticket, a speeding ticket, an uncontested divorce proceeding, a small claim, or any number of legal proceedings known to lawyers to make one into a "defendant in a lawsuit." It is far more likely that they simply failed to make a disclosure.

Does this mean that most or all the panel was intentionally lying because they failed to disclose any brushes with the court system? The obvious answer is "no." The reason potential jurors do not respond to such questions is that the popular notion of being a "defendant in a lawsuit" may not mean the same thing as it does to lawyers. To many ordinary people, being a "defendant in a lawsuit" means hiring a lawyer and going to court to defend some claim on the merits before a judge or a jury. To a venireperson asked that question, it may be perceived as seeking to know if the juror had contact with court personnel or if the potential juror had some experience or background with how a trial works. From that perspective, it seems irrelevant that one has received a summons. It is at least conceivable that an unsophisticated person served with a summons in a collection matter, traffic case, or the like, to which such person has no defense, would not understand himself to have been a "defendant in a lawsuit."

As judges, it is often difficult to comprehend how such misconceptions of such simple matters can occur on the part of citizens. Matters which seem simple and clear to those of us steeped in the law may be confusing or ambiguous to ordinary citizens. Our own ability to understand people like Mr. Oldham may be obscured by a lifetime of legal experience and, at least at the appellate level, a relatively isolated existence. I simply cannot say with the certainty expressed by the majority that real, honest and decent citizens cannot have occasions when a question like the one here just does not "click."

***Brines By and Through Harlan v. Cibis***, 882 S.W.2d at 142 (Holstein, J., dissenting).

9

to this and other similar questions, it is reasonable for [the prospective juror] to have misunderstood the question, and therefore, his failure to respond was not intentional." *Id.* That decision was affirmed on appeal. *Id.* at 620-22. The appellate court stated, "Because the question was not clear, [the potential juror's] failure to reveal information about his son's accident did not constitute an intentional or unintentional nondisclosure." *Id.* at 622.

In the matter before us, after an extensive discussion with jurors about railroad tracks and homes near railroad tracks, Defendant's attorney ended most of her inquiries to the potential jurors with the phrase, "anything about that experience that would make it difficult for you to sit in this case?" Defendant's attorney asked about other lawsuits, which led to jurors explaining the accidents they had been in. She then turned her attention to driving a pickup truck and problems with driving a pickup with pillars that obstructed the view.

> Who here drives a pickup truck? Lots of folks. Who here drives a single cab pickup truck, as opposed to extended cab? A few of you. I think there will be testimony in this case, talking about an A-pillar or a B-pillar. I'm not going to get into all the details with you at this point about that, but we anticipate that there might be testimony with regard to the truck that Scott Spence was driving and the pillars on the truck, the windshield area and then it was a single cab, the area there by the passenger side window. Anyone ever had an experience driving a pickup truck where those pillars in any way obstructed your view? Okay. I'm seeing some hands.
>
> . . . .
>
> And you had a little bit of a blockage on the pillar and you went ahead and went anyway?
>
> . . . .
>
> What about anyone else who's had an issue with a pillar and a pickup truck?

In the middle of this back and forth, Defendant's attorney asked, "Okay. Anyone else who's been in an automobile accident, a motor vehicle accident, or had a close family member who has?"

After an entire morning of questions concerning the railroad, railroad accidents, and pickups with limited views, Defendant now points to one question that it claims was not answered honestly by Juror Cornell. The trial court heard the voir dire, heard the way the question was asked by counsel, and saw the jurors' demeanor during voir dire.[7] With the benefit of time and a cold transcript, the majority on this Court isolate one question out of hundreds of questions and determine that question, in the context of the entire voir dire, was clear and specific enough to command a positive answer. To do so, the majority must isolate that one question from the context of railroad accidents, truck accidents, and/or accidents where there is an obstruction or blockage of the line of sight. It is reasonable that Juror Cornell (and other jurors) may have believed that claims involving generic automobile accidents were not of concern in this case.

Only if the question, in context, is determined to be sufficiently clear does the trial court assess the credibility of the juror at a hearing. Here, although given the opportunity to question the juror, this juror was not questioned at a post-trial hearing. "A trial court's findings concerning whether a juror has failed to disclose relevant information, and concerning whether a juror's explanation for any nondisclosure is reasonable, are accorded great weight, and will not be disturbed on appeal unless the trial court abused its discretion." *Fielder v. Gittings*, 311 S.W.3d 280, 290 (Mo.App. W.D. 2010) (internal quotations omitted) (affirming the grant of a new trial based upon trial court's determination that the nondisclosure was intentional); *see also*, *Shields*, 334 S.W.3d at 692-93 (affirming the trial court's credibility determination that the juror was not lying or trying to cover up in response to a question determined to be clear); *Anbari*, 442

---

[7] It is worth noting that this was a reluctant juror. Juror Cornell had tried to get out of jury duty the week before trial.

S.W.3d at 57 (affirming trial court determination that the juror misunderstood the question); *Saint Louis University v. Geary*, 321 S.W.3d 282, 295-297 (Mo. banc 2009) (affirming trial court credibility finding that the juror's mind may have wandered or he was not paying attention to a question that was determined to be a series of clear questions).

As noted by our Supreme Court in a recent case, "The trial court is familiar with the surrounding circumstances of a juror's misconduct during a trial and is in a better position than we to determine what, if any, effect such conduct may have upon the verdict." *Smotherman v. Cass Regional Medical Center*, 499 S.W.3d 709, 715 (Mo. banc 2016) (internal quotations and citation omitted) (denying a plaintiff a new trial based on juror misconduct and listing numerous decisions affirming the trial court's broad discretion to grant or deny a new trial based on juror misconduct). That Defendant chose not to question Juror Cornell also weighs against reversing the trial court's denial of a new trial. For the foregoing reasons, I would affirm the trial court's decision.[8]

Nancy Steffen Rahmeyer, J. – Dissenting Opinion Author

---

[8] None of the other points brought by Appellant were discussed in the majority opinion. There is no point in addressing each of the other points in this dissent, but, having reviewed them, I would find no merit to any of them and affirm.